1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

JEREMY EARL McCLAIN,

        Plaintiff,

   v.

RYAN WILLIAM BROSOWSKE, et al.,

        Defendants.

Case No. EDCV 17-2377 MWF (SS)

**MEMORANDUM DECISION AND ORDER**

**DISMISSING COMPLAINT WITH**

**LEAVE TO AMEND**

## I.

## INTRODUCTION

Plaintiff Jeremy Earl McClain ("Plaintiff"), a state prisoner proceeding pro se, constructively filed a civil rights complaint on November 1, 2017 pursuant to 42 U.S.C. § 1983.[1] ("Compl.," Dkt.

---

[1] The "mailbox rule" announced by the Supreme Court in Houston v. Lack, 487 U.S. 266 (1988), applies to § 1983 cases. See Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009). Pursuant to the mailbox rule, pro se prisoner legal filings are deemed filed on the date the prisoner delivers the document to prison officials for forwarding to the court clerk. Id. The Court adopts the date Plaintiff signed the Complaint as this action's constructive filing date. See Butler v. Long, 752 F.3d 1177, 1178 n.1 (9th Cir. 2014).

No. 1). The Court granted Plaintiff's application to proceed in forma pauperis on December 4, 2017. ("IFP Order," Dkt. No. 4). On April 4, 2018, the Court received Plaintiff's payment of the initial partial filing fee required by the IFP Order.

Congress mandates that district courts perform an initial screening of complaints in civil actions where a prisoner seeks redress from a governmental entity or employee. 28 U.S.C. § 1915A(a). This Court may dismiss such a complaint, or any portion thereof, before service of process if the complaint (1) is frivolous or malicious, (2) fails to state a claim upon which relief can be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1-2); see also Lopez v. Smith, 203 F.3d 1122, 1126-27 & n.7 (9th Cir. 2000) (en banc). For the reasons stated below, the Complaint is DISMISSED with leave to amend.[2]

\\

\\

\\

\\

---

[2] A magistrate judge may dismiss a complaint with leave to amend without the approval of a district judge. See McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991) ("[T]he dismissal of a complaint with leave to amend is a non-dispositive matter."). Consistent with McKeever, the Court concludes that its Order Dismissing First Amended Complaint with Leave to Amend is a non-dispositive Order. However, pursuant to Federal Rule of Civil Procedure 72, if Plaintiff disagrees, he may file an objection with the District Judge. See Bastidas v. Chappell, 791 F.3d 1155, 1162 (9th Cir. 2015); see also Hunt v. Pliler, 384 F.3d 1118, 1124 (9th Cir. 2004) ("'District court review of even these nondispositive matters . . . can be compelled upon objection of the party against whom the magistrate has ruled.'") (quoting McKeever, 932 F.2d at 798).

## II.

### ALLEGATIONS OF THE COMPLAINT

Plaintiff sues four employees of the San Bernardino County Sheriff's Department ("SBCSD"): (1) Deputy Ryan William Brosowske, (2) Detective Paul Solorio, (3) Sergeant Brett Zour, and (4) John Doe #1. (Compl. at 3-4 (continuous pagination)). All Defendants are sued in both their individual and official capacities. (Id.).

Plaintiff alleges that following his arrest on November 17, 2014, he was riding in the back of a police car driven by Deputy Brosowske. (Id. at 5, 7). Plaintiff was not secured by a seat belt. (Id. at 6). Because Brosowske was not paying attention to traffic, he rear-ended a civilian's car that was stopped at a red light. (Id. at 8).

Plaintiff suffered injuries to his neck and back in the accident. (Id. at 7). He asked Brosowske to take him to the hospital, but Brosowske refused. (Id. at 8). Instead, Brosowske threatened Plaintiff, stating, "If you try that shit, I'll fuck you off!" (Id. at 8). Broswoske drove away from the scene of the accident without giving his name or contact information to the driver of the car he hit. (Id. at 5).

Brosowske took Plaintiff to the High Desert Detention Center, where the intake deputy, John Doe #1, had the same "call[o]us and malicious" attitude as Brosowske. (Id. at 8). Both Doe #1 and Brosowske denied Plaintiff "any opportunity to be evaluated &

3

treated for injuries [he] received" as a consequence of the accident. (Id.).

Detective Paul Solorio interviewed Plaintiff several hours later. (Id. at 9). Plaintiff described the accident in detail to Solorio and told him that Brosowske had threatened his life when he asked for medical attention. (Id.). Plaintiff also told Solorio that he was in "extreme pain" but still had not received any treatment, and "begged" him for medical assistance. (Id.). Solorio said "sure," but "left [Plaintiff] there unchecked [and] untreated for injuries received . . . ." (Id.).

That same day, Solorio assigned an officer to conduct an investigation into the accident. (Id. at 13). The officer conducted interviews on the evening of the accident and wrote a report of his findings dated the next day, November 18, 2014. (Id.). Sergeant Brett Zour reviewed the officer's report on December 1, 2014. (Id.). However, Zour "failed to identify" that Brosowske had breached protocol by failing to offer Plaintiff an opportunity to receive basic medical attention. (Id. at 11). Zour also "failed to identify" that Plaintiff had told Solorio in his interview that he was injured. (Id.).

Plaintiff was released from police custody at 6:00 a.m. on November 18, 2014. (Id. at 10). Although he had been in custody for approximately twelve hours, he was not examined or treated for his injuries at any point prior to his release. (Id.).

Medical records dated November 18, 2014 attached to the Complaint reflect that on the same day Plaintiff was released, he went to the emergency room at Victor Valley Global Medical Center at 4:00 p.m. complaining of pain to his neck and back. (Id. at 26). He was discharged at 6:50 p.m. with after care instructions that stated, in part, that although he had been diagnosed with strains to his neck and thoracic spine muscles, the attending physician did not find any pain over the bones in those areas, making it "very unlikely that [Plaintiff] had" a fracture in his neck or a broken bone in his spine. (Id. at 27). The instructions further noted that the physician did not consider it necessary to take an x-ray. (Id.). The instructions directed Plaintiff to apply a warm damp washcloth or towel to his neck and back to reduce any pain. (Id. at 27-28).

Plaintiff alleges that since the accident, he has been "in constant fear for [his] safety, for [his] life," and states that preparing the instant Complaint has been "wearing [him] down," both "emotionally, psychologically and physically." (Id. at 10). Plaintiff alleges that he continues "to suffer pain(s) and fears even to this day" as a result of the accident. (Id.).

Plaintiff claims that all four Defendants are liable for deliberate indifference to his serious medical needs. (Id. at 3-4). In addition, he alleges that: Solorio, Zour and Doe #1 violated his equal protection rights; Brosowske, Solorio and Zour conspired to deprive him of due process; Brosowske "made threats against [his] life"; and Solorio "falsified [the] police report."

(Id.).  Plaintiff seeks monetary damages of $2,750,000 from Brosowske, $1,500,000 from Solorio, and $1,000,000 each from Zour and Doe #1.  (Id. at 12).  In addition, Plaintiff demands the following relief:  (1) admission into a federal witness protection program; (2) full discharge from state and county probation and parole requirements; (3) relocation outside the state of California and housing; (4) vocational training; (5) "full medical coverage for life" and (6) removal of Brosowske from any position that brings him in contact with the public.  (Id.).

### III.

### DISCUSSION

Under 28 U.S.C. § 1915A(b), the Court must dismiss the FAC due to pleading defects.  However, the Court must grant a pro se litigant leave to amend his defective complaint unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."  Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and internal quotation marks omitted).  For the reasons discussed below, it is not "absolutely clear" that at least some of the Complaint's defects could not be cured by amendment.  The Complaint is therefore DISMISSED with leave to amend.

**A.    Plaintiff's Claims May Be Barred By The Statute Of Limitations**

"The applicable statute of limitations for actions brought pursuant to 42 U.S.C. § 1983 is the forum state's statute of

limitations for personal injury actions." <u>Carpinteria Valley</u>
<u>Farms, Ltd. v. County of Santa Barbara</u>, 344 F.3d 822, 828 (9th Cir.
2003). Effective January 1, 2003, the statute of limitations for
personal injury actions in California is two years. Cal. Code Civ.
Proc. § 335.1. However, while state law determines the statute of
limitations for § 1983 claims, "'federal law determines when a
civil rights claim accrues.'" <u>Azer v. Connell</u>, 306 F.3d 930, 936
(9th Cir. 2002) (quoting <u>Morales v. City of Los Angeles</u>, 214 F.3d
1151, 1153-54 (9th Cir. 2000)). Under federal law, "a claim accrues
when the plaintiff knows or should know of the injury that is the
basis of the cause of action." <u>Douglas v. Noelle</u>, 567 F.3d 1103,
1109 (9th Cir. 2009); <u>Maldonado v. Harris</u>, 370 F.3d 945, 955 (9th
Cir. 2004).

When a federal court borrows the state statute of limitations,
it also borrows the state's tolling rules. <u>Canatella v. Van De</u>
<u>Kamp</u>, 486 F.3d 1128, 1132 (9th Cir. 2007). This applies to both
statutory and equitable tolling. <u>See</u> <u>Jones v. Blanas</u>, 393 F.3d
918, 927 (9th Cir. 2004) ("For actions under 42 U.S.C. § 1983,
courts apply the forum state's statute of limitations for personal
injury actions, along with the forum state's law regarding tolling,
including equitable tolling, except to the extent any of these laws
is inconsistent with federal law.").

California Civil Procedure Code § 352.1(a) provides that when
a plaintiff is "imprisoned on a criminal charge" for "a term less
than life" at the time a claim accrues, the statute of limitations
is statutorily tolled during the time of his imprisonment for up

to two more years.  See Cal. Civ. Proc. Code § 352.1(a); see also Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999) (citing same). The California Court of Appeal has held as a matter of first impression in a very recent decision that "a would-be plaintiff is 'imprisoned on a criminal charge' within the meaning of section 352.1 [only] if he or she is serving a term of imprisonment in the state prison." Austin v. Medicis, __Cal. Rptr.__, 2018 WL 1407120, at *11 (Cal. Ct. App. Mar. 21, 2018).  Accordingly, the Austin court found that an arrestee who was in pretrial custody in a county jail at the time his claims accrued was not "imprisoned on a criminal charge" for purposes of § 352.1 and the statute's automatic tolling provisions did not apply.  Id.; see also Groce v. Claudat, 603 F. App'x 581, 582 (9th Cir. 2015) (§ 352.1 inapplicable where plaintiff "was not incarcerated when his claims accrued").

Whether or not a plaintiff is entitled to the automatic tolling provisions of § 352.1, equitable tolling may still extend the running of the statute of limitations.  "Equitable tolling under California law 'operates independently of the literal wording of the Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.'"  Jones, 393 F.3d 918, 928 (quoting Lantzy v. Centex Homes, 31 Cal. 4th 363, 370 (2003)).  "Under California law, a plaintiff must meet three conditions to equitably toll a statute of limitations:  (1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct must

have been reasonable and in good faith."  Fink, 192 F.3d at 916

(internal quotation marks and citation omitted).


  Plaintiff was arrested on November 17, 2014 and released from

custody approximately twelve hours later, on November 18, 2014.

Based solely on the Complaint's allegations and attachments, it

would appear that Plaintiff arguably "knew or should have known"

of his injuries at the very latest after he sought medical care at

the emergency room the day he was released.  Unless another accrual

date applies, Plaintiff's claims would therefore have accrued on

November 18, 2014 and expired two years later, on November 18,

2016.  See Douglas, 567 F.3d at 1109.  Plaintiff constructively

filed the Complaint on November 1, 2017.  Accordingly, absent some

form of tolling, this action would appear to be untimely by eleven

and a half months.


  It is unclear whether Plaintiff may be eligible for tolling

under § 352.1.  Because Plaintiff was released twelve hours after

his arrest, he was plainly not serving a prison sentence on November

18, 2014.  If Plaintiff's claims accrued upon his discharge from

the emergency room later that day, Plaintiff's eligibility for the

automatic provisions of § 352.1(a) does not seem likely.  Indeed,

if Plaintiff's claims accrued on November 18, 2014, even if the

Court were to apply a much more expansive interpretation of § 352.1

and conclude that its tolling provisions apply if a plaintiff is

simply in any form of continuous custody when his claims accrue,

Plaintiff's early morning release would seem to preclude the

application of § 352.1 under any scenario.[3] Nor is it clear whether Plaintiff might be entitled to equitable tolling, as the Complaint does not allege any facts relevant to that analysis.

In sum, it is unclear at this stage of the proceedings when Plaintiff's claims actually accrued, whether and when he was in custody between November 18, 2014 and November 1, 2017, and whether his claims are eligible for tolling under § 352.1 or for equitable tolling. However, to the extent that Plaintiff knew of the basis for his claims on the day he was released by the SBCSD and no form of tolling applies, Plaintiff is advised that some or all of his claims may be barred by the statute of limitations.

The Court is not ruling on the timeliness of Plaintiff's claims in this Order. The purpose of this statute of limitations discussion is simply to advise Plaintiff of the possible concerns relating to the statute of limitations and provide Plaintiff the opportunity to address this issue in any amended complaint. To be clear, the Court is not dismissing the Complaint on timeliness grounds in this Order as the Court lacks sufficient information to make that determination.

---

[3] The Court takes judicial notice that the California Department of Corrections and Rehabilitation's inmate locator website reflects that Plaintiff has been incarcerated in state prison since April 21, 2017. (See https://inmatelocator.cdcr.ca.gov/); see also In re Yahoo Mail Litig., 7 F. Supp. 3d 1016, 1024 (N.D. Cal. 2014) (court may take judicial notice of information on "publicly accessible websites" not subject to reasonable dispute). It is unclear whether Plaintiff's current custody has any relation to his November 17, 2014 arrest.

**B.    The Complaint Violates Federal Rule Of Civil Procedure 8**

To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution . . . committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).    To establish a particular defendant's liability for the constitutional violation, the plaintiff must show either the defendant's direct, personal participation in the constitutional violation, or some sufficient causal connection between the defendant's conduct and the alleged violation.    See Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011).

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"    Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)).    Rule 8 may be violated when a pleading "says too little," and "when a pleading says too much."    Knapp v. Hogan, 738 F.3d 1106, 1108 (9th Cir. 2013) (emphasis in original).

Here, the Complaint violates Rule 8 because even though Plaintiff generally identifies the constitutional right he believes each Defendant has violated, the Complaint does not clearly explain what each Defendant separately did to violate each particular constitutional right.    Without more specific information, Defendants cannot respond to the Complaint.    See Cafasso, U.S. ex

rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (a complaint violates Rule 8 if a defendant would have difficulty understanding and responding to the complaint). Furthermore, bare allegations that Brosowske "made threats against [Plaintiff's] life" and that Solorio "falsified [a] police report" do not show what constitutional right such purported acts violated, or what harm Plaintiff suffered by these acts. (See Compl. at 3).

Because Plaintiff is not required to provide evidence supporting his claims at this stage of the litigation, the exhibits attached to the Complaint, and the Complaint's many references to and summaries of the exhibits, appear unnecessary. Finally, in nearly every instance, the injunctive relief Plaintiff seeks in his Request for Relief has no apparent connection to the claims alleged and therefore would not remedy the purported constitutional violations. See, e.g., Pac. Radiation Oncology, LLC v. Queen's Med. Ctr., 810 F.3d 631, 633 (9th Cir. 2015) ("A court's equitable power lies only over the merits of the case or controversy before it. When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction."). Accordingly, the Complaint is dismissed, with leave to amend.

**C.    The Complaint Fails To State A Claim Against Defendants In Their Official Capacity**

A suit against a defendant in his individual capacity "seek[s] to impose personal liability upon a government official for actions

12

he takes under color of state law. . . . Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (internal quotation marks omitted); see also Community House, Inc. v. City of Boise, Idaho, 623 F.3d 945, 966-67 (9th Cir. 2010) (an official capacity suit is treated as a suit against the entity). Because all Defendants are employees of San Bernardino County, claims against them in their official capacity are effectively claims against the County.

A local governmental entity, such as a city or county, may be a proper defendant in a § 1983 action. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 n.54 (1978); Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986) (extending Monell's analysis of municipal liability to counties). However, a local government entity is not liable under § 1983 simply because its employees violated the plaintiff's constitutional rights. Monell, 436 U.S. at 691. To assert a valid section 1983 claim against the County, Plaintiff must show both a deprivation of constitutional rights and a departmental policy, custom or practice that was the "moving force" behind the constitutional violation. Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008). There must be "a direct causal link between a [County] policy or custom and the alleged constitutional deprivation." See id. (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

Plaintiff does not identify a San Bernardino County policy, custom or practice that led to his alleged injury. As such,

Plaintiff fails to state a valid constitutional claim against the County through Defendants in their official capacity. Accordingly, the Complaint is dismissed, with leave to amend.

D. **The Complaint Fails to State A Supervisory Liability Claim Against Sergeant Zour**

The only allegations against Sergeant Zour are that in his review of police reports, he "failed to identify" that Brosowske breached protocol by not offering Plaintiff medical attention or that Plaintiff told Solorio that he was injured. (Compl. at 11). These vague and conclusory allegations fail to state a claim for supervisory liability, or indeed, any constitutional claim at all.

Government officials are not liable under section 1983 simply because their subordinates engaged in unconstitutional conduct. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Where a plaintiff sues a supervisor but does not allege that the supervisor directly participated in the constitutional violation, a "sufficient causal connection" to the violation may be shown where the supervisor "set 'in motion a series of acts by others, or knowingly refused to terminate [such acts], which he knew or reasonably should have known, would cause others to inflict the constitutional injury.'" Levine v. City of Alameda, 525 F.3d 903, 907 (9th Cir. 2008) (quoting Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991)); see also Preschooler II v. Clark County Bd. of Trustees, 479 F.3d 1175, 1183 (9th Cir. 2007) (a supervisor may be held accountable only "for his own culpable action or inaction in the

14

training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others").

A vague, conclusory claim that Zour "failed to identify" particular details when reviewing police reports does not explain why Plaintiff thinks Zour missed them or what Plaintiff believes Zour should have done had he noticed them. More fundamentally, Plaintiff does not have a constitutional right to any particular outcome of a police investigation. See, e.g., Diamond v. Charles, 476 U.S. 54, 64 (1986) ("'[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.'") (quoting Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)). Accordingly, the Complaint must be dismissed, with leave to amend.

**F.     The Complaint Fails To State A Claim For Deliberate Indifference To Serious Medical Needs**

The Complaint states that Plaintiff is bringing his deliberate indifference claim under the Eighth Amendment. (Compl. at 5). However, Plaintiff alleges that he was denied medical care while in police custody pursuant to an arrest, not a criminal conviction. "Because pretrial detainees are not convicted prisoners, the rights of those in police custody to receive medical treatment arise under the Due Process Clause of the Fourteenth Amendment," not the Eighth Amendment. Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996).

Nonetheless, because the due process rights of pretrial detainees are "at least as great as the Eighth Amendment protections available to a convicted prisoner," City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983), "the guarantees of the Eighth Amendment provide a minimum standard of care for determining [pretrial detainees'] rights, including the rights to medical and psychiatric care." Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1120 (9th Cir. 2003) (emphasis in original); see also Lolli v. Cnty. of Orange, 351 F.3d 410, 419 (9th Cir. 2003) (pretrial detainee's claim of deliberate indifference to a serious medical need is analyzed under the Fourteenth Amendment Due Process Clause rather than under the Eighth Amendment, but same standards apply); Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010) ("We have long analyzed claims that correction facility officials violated pretrial detainees' constitutional rights by failing to address their medical needs . . . under a 'deliberate indifference' standard.") (internal quotation marks and citation omitted).

To state a claim of deliberate indifference, a pretrial detainee must establish that "the officials acted with deliberate indifference in failing to respond to a serious medical need." Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998). To establish a "serious medical need," the plaintiff must show that he was "confined under conditions posing a risk of 'objectively, sufficiently serious' harm." Lolli, 351 F.3d at 419 (quoting Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002)). To establish the defendant's deliberate indifference to such a need, the plaintiff must show that "the officials had a sufficiently culpable

state of mind in denying the proper medical care." Lolli, 351 F.3d at 419 (quoting Clement, 298 F.3d at 904) (internal quotation marks omitted). A defendant is liable only if he "knows of and disregards an excessive risk to [the detainee's] health and safety." Lolli, 351 F.3d at 418. "In order to know of the risk, it is not enough that the person merely be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists . . . he must also draw that inference." Id. at 419.

Plaintiff alleges that all four Defendants, including Doe #1 and Sgt. Zour, were deliberately indifferent to his serious medical needs. (Compl. at 3-4). However, while Plaintiff alleges that he at least told Brosowske and Solorio that he was injured and desired medical treatment, the Complaint does not allege any facts showing that Doe #1 was ever informed of an alleged injury; nor does Plaintiff explain what he believes Sgt. Zour, whose only role appears to have been to review police reports about the incident weeks and months after Plaintiff was released from SBCSD custody, could possibly have done at that point to address Plaintiff's alleged injury. Even with respect to Brosowske and Solorio, Plaintiff does not allege sufficient facts showing that they subjectively knew that he had a serious need for medical attention and was not simply faking an injury, as Brosowske overtly contended. Furthermore, the after care instructions that Plaintiff received upon his discharge from the emergency room, which reflect that Plaintiff was diagnosed with sprains that could be treated with warm compresses and did not require an x-ray, do not suggest that keeping Plaintiff in custody for twelve hours without medical

assistance necessarily posed a risk of "objectively, sufficiently serious harm" to Plaintiff's health.  <u>Lolli</u>, 351 F.3d at 419. Accordingly, the Complaint must be dismissed, with leave to amend.

**G.     <u>The Complaint Fails To State An Equal Protection Claim</u>**

The Equal Protection Clause broadly requires the government to treat similarly situated people equally.  <u>Hartman v. California Dep't of Corr. and Rehabilitation</u>, 707 F.3d 1114, 1123 (9th Cir. 2013).  To state an equal protection claim, typically a plaintiff must allege that "'defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class,'" such as a particular race or religion.  <u>Furnace v. Sullivan</u>, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998)).  "Intentional discrimination means that a defendant acted at least in part <u>because</u> of a plaintiff's protected status."  <u>Serrano v. Francis</u>, 345 F.3d 1071, 1082 (9th Cir. 2003) (internal quotation marks and citation omitted; emphasis in original); <u>see also</u> <u>Byrd v. Maricopa Cnty. Sheriff's Dep't</u>, 565 F.3d 1205, 1212 (9th Cir. 2009) (to state an equal protection claim, plaintiff "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent").

The basis for Plaintiff's equal protection claims against Solorio, Zour and Doe #1 is entirely unclear.  The Complaint does not identify Plaintiff's membership in any group or protected class or allege any facts showing that Plaintiff was intentionally

discriminated against because of his membership in that group or class.  Accordingly, the Complaint must be dismissed, with leave to amend.

**H.   The Complaint Fails To State A Due Process Claim**

The Fourteenth Amendment provides that the State shall not "deprive any person of life, liberty or property, without due process of the law."  U.S. Const. amend. XIV, § 1.  To state a substantive due process claim, a plaintiff must allege that a state actor deprived him "of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'"  Corales v. Bennett, 567 F.3d 554, 568 (9th Cir. 2009) (quoting United States v. Salerno, 481 U.S. 739, 746 (1987)).  To state a procedural due process claim, a plaintiff must demonstrate that he was denied substantive due process, then show that the procedures attendant upon the deprivation were constitutionally insufficient.  Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 459-60 (1989); Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998) ("A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections.").

Plaintiff contends that Brosowske, Solorio and Zour conspired to deprive him of due process.  (Compl. at 3-4).  However, like Plaintiff's equal protection claims, the basis for Plaintiff's due

process claims is entirely unclear.[4]  The Complaint does not appear to challenge the lawfulness of Plaintiff's arrest, for example, but instead focuses on Defendants' purportedly unlawful conduct following the arrest.  Plaintiff does not identify a deprivation of liberty or property that "shocks the conscience" or any inadequate procedures that resulted in the deprivation.  Accordingly, the Complaint must be dismissed, with leave to amend.

**I.  The Complaint Fails To State A Claim For Conspiracy**

To state a claim for conspiracy under section 1983, a plaintiff must show "an agreement or meeting of minds" by defendants to violate the plaintiff's constitutional rights.  Woodrum v. Woodward County, Okl., 866 F.2d 1121, 1126 (9th Cir. 1989).  "The defendants must have, by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage."  Mendocino Evntl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1301 (9th Cir. 1999) (footnote, internal quotation marks, and brackets omitted).

Because the Complaint does not clearly identify the liberty or property interest of which Plaintiff was allegedly deprived, the claims that Brosowske, Solorio and Zour "conspired" to deprive

[4] As discussed in Part III.F above, Plaintiff's claim for deliberate indifference arises under the due process clause of the Fourteenth Amendment.  However, because Plaintiff erroneously contends in the Complaint that he is bringing his deliberate indifference claim under the Eighth Amendment, (Compl. at 5), it seems probable that he may have had in mind some other basis for asserting a due process claim.

him of due process necessarily fail to state a claim.  However, even if Plaintiff had identified a due process violation, which he did not, his conspiracy claim would still fail to state a claim because he did not allege facts showing any "meeting of the minds" among these three Defendants.  The Complaint alleges that Brosowske arrested Plaintiff and took him to the Detention Center.  Solorio questioned Plaintiff there "hours later."  Weeks later, Zour "reviewed" police reports regarding the incident.  The Complaint does not allege any facts showing that the Defendants' dealings with Plaintiff ever even touched or overlapped, much less that Defendants "committed acts that are unlikely to have been undertaken without an agreement," which would allow for an inference of a conspiracy.  Id.  Accordingly, the Complaint must be dismissed, with leave to amend.

## V.

### CONCLUSION

For the reasons stated above, the Complaint is dismissed with leave to amend.  If Plaintiff still wishes to pursue this action, he is granted **thirty (30) days** from the date of this Memorandum and Order within which to file a First Amended Complaint.  In any amended complaint, the Plaintiff shall cure the defects described above.  **Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the Complaint.**  The First Amended Complaint, if any, shall be complete in itself and shall bear both the designation "First Amended Complaint" and the case number assigned to this action.  It

shall not refer in any manner to any previously filed complaint in this matter.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff is strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, <u>a copy of which is attached.</u>** In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims. Plaintiff is strongly encouraged to keep his statements concise and to omit irrelevant details. It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation. Plaintiff is also advised to omit any claims for which he lacks a sufficient factual basis.

**Plaintiff is explicitly cautioned that failure to timely file a First Amended Complaint, or failure to correct the deficiencies described above, will result in a recommendation that this action be dismissed with prejudice for failure to prosecute and obey court orders pursuant to Federal Rule of Civil Procedure 41(b). <u>Plaintiff is further advised that if he no longer wishes to pursue this action, he may voluntarily dismiss it by filing a Notice of</u>**

\\

**Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1). A form Notice of Dismissal is attached for Plaintiff's convenience.**

DATED: April 20, 2018

                                         /S/
                                       SUZANNE H. SEGAL
                                       UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**